# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

FATHER CARLOS MARTINS,

          Plaintiff,               Case No. 25-cv-13653

v.                                Hon. F. Kay Behm

JESUS O. ROMERO, JR.,
KYLE E. CLEMENT, and
CATHOLIC RESOURCE CENTER, INC.,

          Defendants.
_____/

## DEFENDANTS' MOTION TO DISMISS
## AND BRIEF IN SUPPORT

# **TABLE OF CONTENTS**

I.   Introduction..................................................................................................1

II.   Factual Summary ........................................................................................2

III.   Fr. Martins' Complaint Should Be Dismissed .................................6

    A.   The Ecclesiastical Abstention Doctrine Bars This Court's
    Exercise Of Subject Matter Jurisdiction Over Fr. Martins'
    Complaint ...........................................................................................6

        1.   Controlling Legal Principles ....................................................6

        2.   The Ecclesiastical Abstention Doctrine Bars This Court's
        Subject Matter Jurisdiction .......................................................7

    B.   Fr. Martins' Claims Are Barred By The First Amendment
    Because Defendants Are Entitled To Express Their Opinion
    About Fr. Martins' Religious Qualifications ......................................12

        1.   Controlling Legal Principles ....................................................12

        2.   Religious Opinion Is Unequivocally Protected Speech...........13

        3.   Defendants' Alleged Statements Regarding Fr. Martins
        Are Religious Opinions Protected By The First
        Amendment That Cannot Form The Basis Of Either A
        Defamation Or False Light Claim .............................................16

IV.   Conclusion .................................................................................................19

i

## <u>INDEX OF AUTHORITIES</u>

**Cases**

*Anderson v. Watchtower Bible and Tract Soc'y of N.Y., Inc.*,
  No. 2004-01066, 2007 WL 161035, at \*31 (Tenn. Ct. App. Jan. 19, 2007) ....... 15

*Ashcroft v. Iqbal*,
  556 U.S. 662, 678 (2009) ...................................................................................... 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 570 (2007) ...................................................................................... 13

*Bible Believers v. Wayne Cnty.*,
  805 F.3d 228, 255-56 (6th Cir. 2015) ................................................................. 15

*Bible Way Church of Our Lord Jesus Christ of the Apostolic Faith v. Beards*,
  680 A.2d 419, 430 (D.C. 1996) ............................................................................. 7

*Boos v. Barry*,
  485 U.S. 312, 322 (1988) ...................................................................................... 14

*Burgess v. Rock Creek Baptist Church*,
  734 F.Supp. 30, 31 (D.D.C. 1990) ........................................................................ 7

*Downs v. Roman Cath. Archbishop of Balt.*,
  683 A.2d 808, 812 (Md. Ct. Spec. App. 1996) ...................................................... 8

*Elec. Merch. Sys. LLC v. Gaal*,
  58 F.4th 877, 882 (6th Cir. 2023) ........................................................................ 12

*Farley v. Wisc. Evangelical Lutheran Synod*,
  821 F.Supp. 1286, 1290 (D. Minn. 1993) .............................................................. 9

*Fisher v. Perron*,
  30 F.4th 289, 294 (6th Cir. 2022) ................................................................. 12, 13

*Found. for Behav. Res. v. W. E. Upjohn Unemployment Tr. Corp.*,
  957 N.W.2d 352, 355 (Mich. Ct. App. 2020) ................................................. 11, 18

*Founding Church of Scientology v. United States*,
  409 F.2d 1146, 1156 (D.C. Cir. 1969) ................................................................. 15

*Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*,
   491 F.3d 320, 330 (6th Cir. 2007). ..........................................................6

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323, 339-40 (1974)..............................................................14

*Heard v. Johnson*,
   810 A.2d 871, 882 (D.C. 2002) ......................................................7, 9

*Hosanna-Tabor Evangelical Lutheran Church and Sch. v. EEOC*,
   565 U.S. 171, 181, 184-85 (2012) ........................................................8

*Howard v. City of Detroit*,
   40 F.4th 417, 422 (6th Cir. 2022) ........................................................6

*Hustler Mag., Inc. v. Falwell*,
   485 U.S. 46, 51 (1988)........................................................................13

*Hutchison v. Thomas*,
   789 F.2d 392, 396 (6th Cir. 1986) ......................................................10

*InterVarsity Christian Fellowship/USA v. Bd. of Governors of Wayne State Univ.*,
   534 F.Supp.3d 785, 803 (E.D. Mich. 2021)....................................8, 15

*Jones v. Wolf*,
   443 U.S. 595, 604 (1979) ......................................................................9

*Kedroff v. St. Nicholas Cathedral*,
   344 U.S. 94, 116 (1952) ........................................................................7

*Lac Vieux Desert Band of Lake Chippewa Indians v. Mich. Gaming Control Bd.*,
   172 F.3d 397, 410 (6th Cir. 1999) ......................................................13

*Letica Corp. v. Sweetheart Cup Co., Inc.*,
   790 F.Supp. 702, 706 (E.D. Mich. 1992)..............................................7

*Maktab Tarighe Oveyssi Shah Maghsoudi, Inc. v. Kianfar*,
   179 F.3d 1244, 1250 (9th Cir. 1999) ..................................................12

*McCurdy v. Montgomery Cnty*,
   240 F.3d 512, 520 (6th Cir. 2001) ......................................................13

iii

*Minker v. Balt. Ann. Conf. of United Methodist Church*,
   894 F.2d 1354, 1357 (D.C. Cir. 1990) ................................................................8, 9

*Mitan v. Campbell*,
   706 N.W.2d 420, 421-22 (Mich. 2005) ....................................................... 11, 18

*Moir v. Greater Cleveland Reg'l Transit Auth.*,
   895 F.2d 266, 269 (6th Cir. 1990) ........................................................................6

*N.Y. Times Co. v. Sullivan*,
   376 U.S. 254, 270 (1964) ........................................................................... 13, 14

*Orr v. Argus-Press Co.*,
   586 F.2d 1108, 1114-1115 (6th Cir. 1978) ........................................................14

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*,
   591 U.S. 732, 746 (2020) .....................................................................................8

*Prater v. City of Burnside*,
   289 F.3d 417, 427 (6th Cir. 2002) .....................................................................16

*Presbyterian Church in the U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian*
   *Church*, 393 U.S. 440, 445, 449 (1969) ...........................................................10

*Puri v. Khalsa*,
   321 F.Supp.3d 1233, 1251, 1245, n.8 (D. Or. 2018) ........................................10

*Rosenblatt v. Baer*,
   383 U.S. 75, 86 (1966) .......................................................................................14

*Roth v. United States*,
   354 U.S. 476, 484 (1957) ...................................................................................13

*Serbian E. Orthodox Diocese v. Milivojevich*,
   426 U.S. 696, 708-09 (1976) ..........................................................................7, 10

*Snyder v. Phelps*,
   562 U.S. 443, 452 (2011) ...................................................................................13

*Thomason v. Gaskill*,
   315 U.S. 442, 446 (1942) .....................................................................................7

*Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Vill. of Stratton*,
    536 U.S. 150, 160-64 (2002)..................................................................................16

*Yaggie v. Ind.-Ky. Synod Evangelical Lutheran Church in Am.*,
    860 F.Supp. 1194, 1199 (W.D. Ky. 1994)............................................................9

**Rules**

FED. R. CIV. P. 12(b)(1)........................................................................... 1, 6, 12

FED. R. CIV. P. 12(b)(6).............................................................................2, 12

## **STATEMENT OF ISSUES PRESENTED**

1.    Whether Plaintiff Father Carlos Martins' Complaint should be dismissed with prejudice because the Ecclesiastical Abstention Doctrine bars this Court's exercise of subject matter jurisdiction over Fr. Martins' claims that could only be resolved by the review, application, and interpretation of Catholic doctrine.

      Defendants say "yes."

2.    Whether Fr. Martins' Complaint should be dismissed with prejudice because the First Amendment protects Defendants' right to express their opinion regarding their interpretation of Catholic faith and Fr. Martins' qualifications to perform exorcisms.

      Defendants say "yes."

## <u>CONTROLLING LEGAL AUTHORITY</u>

Fed. R. Civ. P. 12(b)(1)

Fed. R. Civ. P. 12(b)(6)

## <u>MOTION TO DISMISS</u>

Defendants Jesus O. Romero, Jr., Kyle E. Clement, and Catholic Resource Center, Inc. ("Defendants"), through counsel and pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, respectfully move this Court for an Order dismissing Fr. Martins' Complaint with prejudice, and awarding them such other relief that the Court determines is just and appropriate under the circumstances.

Pursuant to Local Rule 7.1, counsel for Defendants sought concurrence in the relief sought by this Motion from Fr. Martins' counsel. Such concurrence was not received.

## I.   <u>INTRODUCTION</u>

The central question in this case is whether Fr. Martins is sufficiently qualified to perform exorcisms since Defendants "repeatedly assert[ed] that the Plaintiff is not an exorcist." ECF No. 1, PageID.1 at ¶ 2. Fr. Martins asserts that Defendants made "factual statements concerning [his] profession and work as an exorcist that were false, misleading, and defamatory." ECF No. 1, PageID.11 at ¶ 52. As a result of these statements, Fr. Martins claims that he "fears people believe him to be a fraud, who is not worthy of the priesthood and not to be trusted as an exorcist." ECF No. 1, PageID.21 at ¶ 90. Determining whether Fr. Martin is authorized to perform exorcisms turns entirely on the interpretation and application of Catholic faith, and as a consequence, the Ecclesiastical Abstention Doctrine bars this Court from exercising subject matter jurisdiction, and the Complaint should be dismissed pursuant to Rule 12(b)(1).

Barred not only by the Ecclesiastical Abstention Doctrine, but Fr. Martins also fails to state a claim upon which relief can be granted because the First Amendment protects Defendants' expression of their religious beliefs and opinions regarding Fr. Martins' qualifications to perform the Catholic rite of exorcism. Long-standing First Amendment traditions condone the criticism of religious leaders and their mandate (or lack thereof) to speak on behalf of God. Taking Fr. Martins' allegations as true only for the sake of this Motion, Defendants' opinion as to Fr. Martins'

qualifications and ability to perform exorcisms is protected by the First Amendment. Thus, Fr. Martins has also failed to state a claim upon which relief can be granted under Rule 12(b)(6).

## II.  FACTUAL SUMMARY

Fr. Martins admits that he is a public figure—that he "is a well-known priest of the Catholic Church and has built a large social media following due to his work as an exorcist." ECF No. 1, PageID.2 at ¶ 7. Fr. Martins claims to have a "great reputation as a religious figure[,]" "well respected by his peers and beyond his religious community[,]" and had a "renowned media presence with The Exorcist Files podcast and published book." ECF No. 1, PageID.2 at ¶ 9.

In the Complaint, Fr. Martins alleges that Defendants Romero and Clement are not ordained priests and do not hold religious titles within the Catholic Church. ECF No. 1, PageID.3 at ¶¶ 12, 15. Rather, Romero is "the main host of the Jesus 911 podcast and has appeared in and recorded Jesus 911 approximately five to six days a week since September 4, 2024…." ECF No. 1, PageID.5 at ¶ 28. According to Fr. Martins, "Clement is a prominent and consistent guest commentator on the Jesus 911 podcast." ECF No. 1, PageID.7 at ¶ 35. The Jesus 911 podcast is broadcast through the non-profit Catholic Resource Center, Inc., which owns and operates the Virgin Most Powerful Radio. ECF No. 1, PageID.4 at ¶¶ 19-20. Fr. Martins notes that "Romero, Clement, and VMPR are affiliated with Liber Christo, an organization

2

that follows the teachings of Fr. Chad Ripperger, a well-known Catholic priest and exorcist. According to the National Catholic Register, Clement is described as Fr. Ripperger's 'long-time assistant' who helped Fr. Ripperger develop Liber Christo." ECF No. 1, PageID.11 at ¶ 49.

Fr. Martins asserts that Romero and Clement defamed him on the Jesus 911 podcast on November 20, November 27, and December 4, 2024. Fr Martins claims that on November 20, 2024, Romero and Clement made "factual statements concerning Fr. Martins' profession and work as an exorcist that were false, misleading, and defamatory." ECF No. 1, PageID.11 at ¶ 52. According to Fr. Martins, Clement asserted that he "is not who he says he is," and added that "[t]he problem that I've got with Fr. Carlos Martins, is he's opining and talking about things of which he does not know." ECF No. 1, PageID.12 at 53. Fr. Martins claims that on November 20, 2024, "Romero and Clement directly question Fr. Martins' work experience as an exorcist, critiquing Fr. Martins' travels across the United States to perform exorcisms, with permission from the local diocese." ECF No. 1, PageID.12 at ¶ 54.

On November 27, 2024, Fr. Martins claims that because Clement and Romero hold themselves out to be a credible "source of truth" when it comes to prominent Catholic figures, they defamed Fr. Martins because they concluded he "is not an exorcist because he is not on the Poe Leo XII Institute alumni list…." ECF No. 1,

PageID.16 at ¶ 69. According to Fr. Martins, neither Romero nor Clement was correct about his ability to perform exorcisms because "[a]ccording to the United States Conference of Catholic Bishops, a priest may be appointed to the office of exorcist either on a 'stable basis' or for a particular occasion, referred to as '*ad actum*.'" ECF No. 1, PageID.16 at ¶ 70. Although Defendants apparently had an e-mail saying that Fr. Martins had "been involved in exorcisms with the appropriate permission and or by request of the corresponding bishop[,]" ECF No. 1, PageID.17 at ¶ 71, Romero and Clement somehow "lied to discredit Fr. Martins" when they claimed he "'hoodwinked' the Catholic world" because "he doesn't have [the appropriate] credential ***canonically***." ECF No. 1, PageID.17 at ¶ 74 (emphasis supplied). Fr. Martins claims that "Romero intentionally misrepresented the contents of the email" he received from Fr. Martins' ministry. ECF No. 1, PageID.17 at ¶ 75. Fr. Martins claims that on November 27, 2024, Romero's and Clement's statements "go beyond mere opinion as they imply and assert as fact what they know to be false" because they received an e-mail from Fr. Martins' ministry certifying that he "is an exorcist who performs exorcisms on an ad actum basis." ECF. No. 1, PageID.18 at ¶ 78.

Finally, Fr. Martins claims that he was defamed by Defendants on December 4, 2024. On that day, Fr. Martins asserts that "Romero and Clement consistently attacked Fr. Martins' work and reputation as a religious figure and exorcist." ECF.

4

No. 1, PageID.21 at ¶ 87. Although Fr. Martins claims that Defendants' statements "go beyond mere opinions as they imply and assert as fact what they know to be false," all of the allegedly defamatory statements about Fr. Martins on December 4, 2024, are related to whether Fr. Martins is sufficiently qualified to perform exorcisms based on Defendants' interpretation of the Catholic faith. ECF No. 1, PageID.19-20 at ¶¶ 80-86.

As a result of Defendants' expression of their opinion regarding their interpretation of Catholic faith and doctrine, Fr. Martins claims that his reputation as a "priest, author, podcaster, and exorcist" have somehow been greatly injured. ECF No. 1, PageID.21 at ¶ 89. Even though Fr. Martins claims to have participated in numerous exorcisms across the country, he also claims that Defendants statements have caused him to suffer "severe emotional distress, including anxiety, sleeplessness, depression, dread, grief, and a sense of hopelessness." ECF No. 1, PageID.21 at ¶ 90. Fr. Martins fears "he will never be able to regain credibility as a priest, author, podcaster, and exorcist[,]" and "he fears people believe him to be a fraud, who is not worthy of the priesthood and not to be trusted as an exorcist." ECF No. 1, PageID.21 at ¶ 90. Given these damages, among others alleged in the Complaint, Fr. Martins purports to bring claims for Defamation (Count I) and False Light (Count II) against Defendants. ECF No. 1, PageID.22-24.

As set forth below, Fr. Martins' claims should be dismissed with prejudice because the application of the Ecclesiastical Abstention Doctrine bars this Court's exercise of subject matter jurisdiction over this dispute, and because the First Amendment protects Defendants' expression of opinion regarding their interpretation of the Catholic faith and how it applies to Fr. Martins.

**III.** **FR. MARTINS' COMPLAINT SHOULD BE DISMISSED**

    **A.** **The Ecclesiastical Abstention Doctrine Bars This Court's Exercise Of Subject Matter Jurisdiction Over Fr. Martins' Complaint**

        *1.* *Controlling Legal Principles*

Rule 12(b)(1) provides for dismissal of a case where the Court lacks subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). "Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). Rule 12(b)(1) motions can make facial or factual attacks on subject matter jurisdiction. *See Howard v. City of Detroit*, 40 F.4th 417, 422 (6th Cir. 2022). Where a defendant does not challenge the facts in the complaint for purposes of the Rule 12(b)(1) Motion, the attack is facial and the facts in the pleading are accepted as true for purposes of the Motion. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).

Where, as here, "the First Amendment casts a shadow over the court's subject matter jurisdiction, the plaintiff is obliged to plead ***unqualified jurisdictional facts***

that clearly take the case outside the constitutional bar." *Heard v. Johnson*, 810 A.2d 871, 882 (D.C. 2002) (emphasis supplied, citing *Bible Way Church of Our Lord Jesus Christ of the Apostolic Faith v. Beards*, 680 A.2d 419, 430 (D.C. 1996)); s*ee also*, *Letica Corp. v. Sweetheart Cup Co., Inc.*, 790 F.Supp. 702, 706 (E.D. Mich. 1992) ("courts have required greater specificity in pleading where the case implicates conduct which is *prima facie* protected by the First Amendment"). Once challenged, the burden of establishing subject matter rests on the party asserting the jurisdiction. *Thomason v. Gaskill*, 315 U.S. 442, 446 (1942).

### 2. The Ecclesiastical Abstention Doctrine Bars This Court's Subject Matter Jurisdiction

The Ecclesiastical Abstention Doctrine is rooted in the First Amendment, and its purpose is to prevent the civil courts from engaging in unwarranted interference with the practices, internal affairs, and management of religious organizations. *See Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 116 (1952). Civil courts cannot adjudicate disputes turning on church policy and administration or on religious doctrine and practice. *See Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 708-09 (1976). "A consequence of this Nation's fundamental belief in the separation of church and state is that, under most circumstances, the First and Fourteenth Amendments preclude civil courts from adjudicating church fights that require extensive inquiry into matters of ecclesiastical cognizance." *Burgess v. Rock Creek Baptist Church*, 734 F.Supp. 30, 31 (D.D.C. 1990).

The Supreme Court has "repeatedly and unequivocally stated the First Amendment creates a broad right against *any* government intrusion into a religious organization's internal affairs." *InterVarsity Christian Fellowship/USA v. Bd. of Governors of Wayne State Univ.*, 534 F.Supp.3d 785, 803 (E.D. Mich. 2021) (citing *Hosanna-Tabor Evangelical Lutheran Church and Sch. v. EEOC*, 565 U.S. 171, 181, 184-85 (2012)). "All government, no matter what branch and no matter what means may be used to conduct religious interference, undeniably falls within the canopy of secular authority." *Id.* at 803-04 (citing *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 746 (2020)).

As the D.C. Circuit has noted, there is not "an area of inquiry less suited to a temporal court for decision; evaluation of the 'gifts and graces' of a minister must be left to ecclesiastical institutions." *Minker v. Balt. Ann. Conf. of United Methodist Church*, 894 F.2d 1354, 1357 (D.C. Cir. 1990) (declining to consider case evaluating the qualifications of a minister). "When the conduct complained of occurs in the context of, or is germane to, a dispute over the plaintiff's fitness or suitability to enter into or remain a part of the clergy, however, it is difficult to see how the forbidden inquiry could be avoided." *Downs v. Roman Cath. Archbishop of Balt.*, 683 A.2d 808, 812 (Md. Ct. Spec. App. 1996) (noting that "[q]uestions of truth, falsity, malice, and the various privileges that exist often take on a different hue when examined in the light of religious precepts and procedures that generally

8

permeate controversies over who is fit to represent and speak for the church."). Examining such controversies is precisely the kind of inquiry that is forbidden to civil courts since "[w]hose voice speaks for the church is *per se* a religious matter." *Minker*, 894 F.2d at 1357.

Numerous courts reviewing defamation claims relating to fitness to serve as a religious leader have concluded that they lack jurisdiction to decide the matter. *See*, *e.g.*, *Heard*, 810 A.2d at 883 ("When a defamation claim arises entirely out of a church's relationship with its pastor, the claim is almost always deemed to be beyond the reach of civil courts because resolution of the claim would require an impermissible inquiry into the church's bases for its action."); *Yaggie v. Ind.-Ky. Synod Evangelical Lutheran Church in Am.*, 860 F.Supp. 1194, 1199 (W.D. Ky. 1994) (dismissing a defamation claim as "ecclesiastical concern, over which this court has no jurisdiction" where among other things, "[i]f truth were a defense to the defamation claim, [the court would] face inquiry into determination of the minister's effectiveness."); *Farley v. Wisc. Evangelical Lutheran Synod*, 821 F.Supp. 1286, 1290 (D. Minn. 1993) (dismissing defamation claim brought by a clergy member).

This Court could only exercise subject matter jurisdiction if it could apply "neutral principles of law" without a need to examine a church's ecclesiastical policy or doctrine. *See Jones v. Wolf*, 443 U.S. 595, 604 (1979) (holding that a state is constitutionally entitled to adopt neutral principles of law as a means of adjudicating

a church property dispute so long as there is no need to examine a church's ecclesiastical doctrines); *Presbyterian Church in the U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440, 445, 449 (1969) (holding that the state has a legitimate interest in adjudicating disputes over church property but may only use neutral principles of law). The neutral principles doctrine "has never been extended to religious controversies in the areas of church government, order and discipline, nor should it be." *Hutchison v. Thomas*, 789 F.2d 392, 396 (6th Cir. 1986). The Court cannot intervene if the dispute required interpreting and weighing church doctrine. *Presbyterian Church*, 393 U.S. at 449 ("First Amendment values are plainly jeopardized when church property litigation is made to turn on the resolution by civil courts of controversies over religious doctrine and practice. If civil courts undertake to resolve such controversies in order to adjudicate the property dispute, the hazards are ever present of inhibiting the free development of religious doctrine and of implicating secular interests in matters of purely ecclesiastical concern.").

To determine whether Fr. Martins is properly an exorcist raises a "substantial danger that the State will become entangled in essentially religious controversies or intervene on behalf of groups espousing particular doctrinal beliefs." *See Serbian E. Orthodox Diocese*, 426 U.S. at 709; s*ee also Puri v. Khalsa*, 321 F.Supp.3d 1233, 1251, 1245 n.8 (D. Or. 2018) (finding that the Ecclesiastical Abstention Doctrine

10

applies even when the "case does not fit neatly into precedents set by prior case law"). Fr. Martins is asking this Court to ratify his position as an exorcist within the Catholic Church. Fr. Martins claims that he was defamed when Defendants asserted that he was not properly an exorcist. Fr. Martins' claims—Defamation and False Light—require a false statement being made about Fr. Martins. *See Mitan v. Campbell*, 706 N.W.2d 420, 421-22 (Mich. 2005) (defamation requires a "false and defamatory statement concerning the plaintiff"); *Found. for Behav. Res. v. W. E. Upjohn Unemployment Tr. Corp.*, 957 N.W.2d 352, 355 (Mich. Ct. App. 2020) (false light requires broadcast of false attributes about plaintiff).

In order to determine whether Defendants' statements were false (that is, whether Fr. Martins is, actually, an exorcist or has successfully performed exorcisms), the Court necessarily would evaluate Catholic doctrine, review internal documents relating thereto, and perhaps even take testimony from competing factions within the Catholic Church. In order to determine whether Defendants statements were defamatory or put Fr. Martins in a false light, the Court would be imposing its secular authority upon the religious authority of the Catholic Church to evaluate the truth of Defendants' statements. This Court cannot determine by neutral, secular principles whether Fr. Martins legitimately is an exorcist; "that kind of determination could only be made by a recognized decision-making body[,]"

*Maktab Tarighe Oveyssi Shah Maghsoudi, Inc. v. Kianfar*, 179 F.3d 1244, 1250 (9th Cir. 1999), in this case, a body within the Catholic Church.

Because Fr. Martins' claims necessarily involve the interpretation and application of competing factions within the Catholic Church, this Court should find that the Ecclesiastical Abstention Doctrine bars its exercise of subject matter jurisdiction and dismiss this action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

### B.   Fr. Martins' Claims Are Barred By The First Amendment Because Defendants Are Entitled To Express Their Opinion About Fr. Martins' Religious Qualifications

#### 1.   *Controlling Legal Principles*

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Rule 12(b)(6). FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court must treat all well-pleaded allegations of the pleadings as true and construe all of the allegations in a light most favorable to the non-moving party. *See Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 882 (6th Cir. 2023). Legal conclusions or unwarranted factual inferences need not be accepted as true. *Fisher v. Perron*, 30 F.4th 289, 294 (6th Cir. 2022) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court must consider "whether the complaint has sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### 2.    *Religious Opinion Is Unequivocally Protected Speech*

The First Amendment is designed "to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Roth v. United States*, 354 U.S. 476, 484 (1957). It reflects a "profound national commitment to the principle that the debate on public issues should be uninhibited, robust, and wide-open." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964); s*ee also McCurdy v. Montgomery Cnty*, 240 F.3d 512, 520 (6th Cir. 2001) ("Since the day the ink dried on the bill of Rights, the right of an American citizen to criticize public officials and policies…has been central to the meaning of the First Amendment.") (overruled on other grounds). Freedom of speech is a fundamental right. *Lac Vieux Desert Band of Lake Chippewa Indians v. Mich. Gaming Control Bd.*, 172 F.3d 397, 410 (6th Cir. 1999). Speech on "public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011). "The sort of robust political debate encouraged by the First Amendment is bound to produce speech critical of those who hold public office or those public figures who are intimately involved in the resolution of important public questions." *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 51 (1988). "[I]n public debate [we] must tolerate insulting, and even outrageous,

speech in order to provide adequate breathing space to the freedoms protected by the First Amendment." *Boos v. Barry*, 485 U.S. 312, 322 (1988).

It is also a basic First Amendment principle that there can be no false ideas. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974). As a result, it is "established as a matter of constitutional law that a statement of opinion about matters which are publicly known is not defamatory." *Orr v. Argus-Press Co.*, 586 F.2d 1108, 1114-1115 (6th Cir. 1978). While there is some speech that falls outside of constitutional protection, the United States Supreme Court has emphasized that freedom of expression must have adequate "breathing space," lest fear of litigation expense causes speakers to "steer wider of the unlawful zone." *N.Y. Times*, 376 U.S. at 272, 279. In the context of claims such as those in the Complaint, this means "when interests in public discussion are particularly strong, as they [are] in th[is] case, the Constitution limits the protections afforded by the law of defamation." *Rosenblatt v. Baer*, 383 U.S. 75, 86 (1966).

Not only is opinion protected, but religious opinion receives particularly strong protection under the First Amendment. "Religious belief, opinion, and interpretation are subject to an additional constitutional protection. While statements of opinion in general, such as political opinion, are not actionable, statements of religious opinion are doubly protected by the First Amendment. They are not amenable to the proof of their truth or falsity, and secular courts have no jurisdiction

14

to determine their truth or falsity." *Anderson v. Watchtower Bible and Tract Soc'y of N.Y., Inc.*, No. 2004-01066, 2007 WL 161035, at *31 (Tenn. Ct. App. Jan. 19, 2007). It is well established that "testing in court the truth or falsity of religious beliefs is barred by the First Amendment." *See Founding Church of Scientology v. United States*, 409 F.2d 1146, 1156 (D.C. Cir. 1969). Free expression of religious opinion is one of the bedrock founding principles of these United States:

> [T]he First Amendment was created in reaction to a long and storied history of the British monarch and the British Parliament enacting laws that force religious practitioners to receive their teachings only from 'approved' sources. Specifically, the British crown was acting to consolidate the control of the English church over religious dissidents and non-conformists, most notably Catholics and Puritans. It should be no wonder that religious outsiders fled England and established colonies in North America, establishing new settlements in such places as Plymouth, Massachusetts. Many of the British North American colonies that eventually formed the United States of America were settled in the seventeenth century by men and women, who, in the face of European persecution, refused to compromise passionately held religious convictions and fled Europe.

*InterVarsity,* 534 F.Supp.3d at 804 (cleaned up). "***The First Amendment was crafted in part to protect religious diversity and allow divergent religionists, who were often the subject of repression and violence, room to create and mold their own spiritual lives and their society.***" *Id.* (emphasis supplied).

"The right to free exercise of religion includes the right to engage in conduct that is motivated by the religious beliefs held by the individual asserting the claim." *Bible Believers v. Wayne Cnty.*, 805 F.3d 228, 255-56 (6th Cir. 2015). The

government cannot prohibit an individual from engaging in religious conduct that is protected by the First Amendment. *Prater v. City of Burnside*, 289 F.3d 417, 427 (6th Cir. 2002). Free exercise claims are often considered in tandem with free speech claims and may rely entirely on the same set of facts. *See generally Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Vill. of Stratton*, 536 U.S. 150, 160-64 (2002) (analyzing governmental restrictions on door-to-door canvassing and pamphleteering in the context of free exercise of religion, free speech, and free press).

### 3.    *Defendants' Alleged Statements Regarding Fr. Martins Are Religious Opinions Protected By The First Amendment That Cannot Form The Basis Of Either A Defamation Or False Light Claim*

Defendants, through the Jesus 911 podcast and the Virgin Most Powerful Radio Network, clearly are expressing their faith, beliefs, and opinions regarding Catholicism doctrines and "canonical" concepts. Jesse Romero describes himself as a "a full Gospel, Bible Believing, Born Again, Spirit Filled, Evangelical, Orthodox Catholic Christian, washed and empowered by the blood of Jesus. With a Bible in one hand, with a rosary in my other hand and with Jesus in my heart, you will hear the fullness of the Catholic faith in an evangelical style with devil destroying theology."[1] The Catholic Resource Center, through the Virgin Most Powerful Radio

---

[1]    https://jesseromero.com/who-jesse-romero

Network website, describes the Jesus 911 podcast as one that "dispatches the wisdom of the saints and the truths of the Catholic Faith to the front lines of your daily battle. We cut through the noise and get straight to the facts. Using the ancient, battle-tested strategies of the Church Fathers, we analyze the assaults of the world, the flesh, and the devil."[2] Finally, Kyle Clement holds himself out as the "long-time assistant of Fr. Chad Ripperger, PhD" with whom he has developed "the Liber Christo protocol": a "system for those who are spiritually afflicted brings objectivity to an otherwise elusive and subjective, at times outright speculative, field. Liber Christo reestablishes Catholic norms to an apostolate that had significantly declined within the Church over the past several decades. The contribution of Fr. Ripperger and Kyle Clement's knowledge in the field of Catholic exorcism and deliverance represented by this Four Phase Protocol cannot be understated."[3] In sum, these Defendants appear to *only* express their opinions on Catholic faith and doctrine.

As set forth in the Complaint, accepted only as pleaded for purposes of this Motion, Defendants singled out Fr. Martins not for any secular basis that could be proven true or false at a hearing or trial in this Court. Rather, Defendants expressed their opinions regarding Fr. Martins' authority to perform the Catholic rite of exorcism. Whether Fr. Martins is properly authorized to perform exorcisms, whether

---

[2]    https://virginmostpowerfulradio.org

[3]    https://montechristo.net/training/

17

he has successfully performed an exorcism in the past, or whether he could perform an exorcism in the future is a fundamentally protected opinion under the First Amendment. Both of Fr. Martins' claims rely on whether Defendants made a provably ***false*** statement, and not the expression of opinion. *See Mitan*, 706 N.W.2d at 421-22 (defamation requires a false statement); *Found. for Behav. Res.*, 957 N.W.2d at 410 (false light requires dissemination of false information). Fr. Martins cannot rely on the torts of defamation or false light to deprive Defendants of their First Amendment right to express their opinion as to Fr. Martins' qualifications or experiences as an exorcist. In order to evaluate the truth of the statements made, the parties would have to engage in discovery into spiritual beliefs, Catholic ecclesiastical practices, and doctrines of the Catholic Church and its varied divisions. Defendants' alleged statements do not involve any secular matters that could be proven as true or false. Rather, they are religious opinions protected by the First Amendment. Consequently, Fr. Martins has failed to state a claim upon which relief can be granted because both his claims are barred by the First Amendment.

## IV.    CONCLUSION

WHEREFORE, Defendants Jesus O. Romero, Jr., Kyle E. Clement, and Catholic Resource Center, Inc. respectfully request that this Court enter an Order dismissing Fr. Martins' Complaint with prejudice and awarding all such other relief that this Court is deems is just and appropriate under the circumstances.

                                        Respectfully submitted,

                                        WINTHROP & WEINSTINE, P.A.

Dated: January 9, 2026                  By: s/H. William Burdett, Jr.
                                            H. William Burdett, Jr. (P63185)
                                        311 Abbot Road
                                        East Lansing, Michigan 48823
                                        (313) 318-9203
                                        bburdett@winthrop.com
                                        *Attorneys for Jesus O. Romero, Jr.,*
                                        *Kyle E. Clement, and Catholic*
                                        *Resource Center, Inc.*

41206553v3